**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

ALAN DOERING                                                           PLAINTIFF
ADC #106115

V.                                        No. 2:19-cv-156-DPM-JTR

ASA HUTCHINSON, Governor,
Arkansas, *et al.*                                                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge D.P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

On December 13, 2019, Plaintiff Alan Doering ("Doering"), a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction

("ADC"),[1] filed this *pro se* § 1983 action alleging that Defendants violated his constitutional rights by being deliberately indifferent to his alleged allergy to fish. *Docs. 2, 9 & 41.*

In prior rulings, the Court has dismissed Doering's claims against Defendants Asa Hutchinson, Wendy Kelley, Dexter Payne, Rory Griffin, Jeremy Andrews, Shaquille Beale, Tevon Smith, Gaylon Lay, Greg Rechcigl, Tammy Kimble, Jasmin Troop, Erma Bell, William Straughn, Gordon Blake Davis, Amanda Steinbarger, Nurse Clark, and Correct Care Solutions. *Docs. 57, 60, & 98.* Thus, his only remaining claims are: (1) an inadequate medical care claim against APN Patrick Drummond ("APN Drummond") for refusing to issue him a "no fish script" and instead instructing him to "eat around" any fish served to him on his food tray; (2) an inadequate medical care claim against APN Terri Moody ("APN Moody") for refusing to issue him a "no fish script," after he told her about having an allergic reaction when he ate some of the food around the fish; (3) a deliberate indifference claims against Correctional Officer Cimonyae Harris ("CO Harris"), who allegedly served him fish, even though he told her about his fish allergy; and (4) a deliberate indifference claim against Lieutenant Frank Leron Graham ("Lt. Graham"), who allegedly instructed Harris to serve him fish, despite knowing about Doering's fish allergy. *Docs. 96 & 98.*

---

[1] At the time he initiated this action, Doering was a prisoner in EARU. He is currently incarcerated in the Grimes Unit. *Doc. 117.*

APN Drummond and APN Moody (collectively the "Medical Defendants") have jointly filed a Motion for Summary Judgment, along with a Brief in Support, and a Statement of Undisputed Facts. *Docs. 123-125*. Likewise, Lt. Graham and CO Harris (collectively the "ADC Defendants") have jointly filed a separate Motion for Summary Judgment, along with a Brief in Support, and a Statement of Undisputed Facts. *Docs. 126-128*.

Doering has filed Responses to both Motions for Summary Judgment, along with separate Statements of Disputed Facts. *Docs. 134-136 & 138*. The Medical Defendants and the ADC Defendants have each filed a Reply to Doering's respective Responses (*Docs. 137 & 140*), and Doering has filed a Sur-Reply to each (*Docs. 141 & 142*).

Finally, Doering has filed his own Motion for Summary Judgment (*Doc. 114*),[2] to which the Medical Defendants and ADC Defendants filed Responses (*Docs. 115- 116 & 129-130*).

Thus, all three of these Motions for Summary Judgment are now fully joined and ready for disposition.[3]

---

[2] Doering captioned this pleading as a "Dispositive Motion." Liberally construing that Motions, within the framework of the Federal Rules of Civil Procedure, it can only be properly considered as a Motion for Summary Judgment.

[3] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a

## II. Discussion

### A. The Undisputed Material Facts[4]

1.      In his deposition, Doering testified that he is allergic to seafood, which he described as lobster, crab, clams, and fish. *Doc. 124-3 at 21*.

2.      Doering testified that, when he was two or three years old, he ate fish and had an allergic reaction, which caused swelling and hives. From then on, Doering's parents told him he was allergic to fish, and he has avoided eating it. *Id. at 21 & 29*.

3.      Doering testified that he has been incarcerated in the ADC for approximately 25 years. Prior to 2019, he was able to obtain alternative "non-fish trays" upon request. However, around July of 2019, EARU officials changed this practice and told Doering he must be issued a "no fish script" by a medical provider in order to receive a "non-fish tray." *Doc. 135 at 5*; *Doc. 124-3 at 16, 24 & 41*.

4.      On July 9, 2019, Doering was seen by APN Drummond. He told APN Drummond he had a fish allergy and requested a "no fish script." At the time

---

genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

    [4] The sources for these facts are Doering's ADC medical records; Doering's deposition testimony; Doering's commissary records, the Affidavit of Dr. Chris Horan, the Defendants' Statements of Undisputed Facts, and Doering's Statements of Disputed Facts. *Docs. 124, 124-1, 124-2, 124-3, 124-4, 124-5, 127, 135, 136, & 138*.

Doering made that request, he was 55 years old and had not eaten fish or had an allergic reaction to fish in over 52 years. *Doc. 135 at 7*; *Doc. 124-1 at 1*.

5.     Doering's ADC medical records reflect that APN Drummond denied his request for a "no fish script" because it was "not medically indicated." He "encouraged [Doering] to eat around the fish" if he encountered it on his food tray. *Doc. 124-1 at 1.*[5]

6.     Doering made a "no fish" sign and placed it outside of his cell to communicate to EARU officers that he did not want to be served any fish. On September 20, 2019, CO Harris informed Doering that fish was being served for lunch that day and asked him if he had a "no fish script." When Doering said that he did not, CO Harris informed him that her supervisor, Lt. Graham, told her to serve Doering a fish tray, along with instructions to eat around the fish, unless Doering showed her a "no fish script." *Doc. 126-3 at 14-17*; *Doc. 126-1 at 1*.

7.     After CO Harris informed Doering he would be served fish for lunch, unless he had a "no fish script," Doering immediately filed an Emergency Grievance. Nevertheless, CO Harris served him a lunch tray on September 20, 2019 that included fish. *Doc. 126-3 at 57-58*.

---

[5] APN Drummond's notation in the medical records states: "IM REQ FOR NO FISH SCRIPT-DENIED, NOT MEDICALLY INDICATED BASED ON PE, IM ENCOURAGED TO EAT AROUND THE FISH." *Doc. 124-1 at 1*.

8.     Doering testified that, as instructed by APN Drummond, he tried to "eat around the fish" by consuming some of the noodles on his tray. After doing so, his eyes began swelling shut; his throat began constricting; he developed hives; and he "got real hot." *Id. at 29-30*.

9.     Doering advised the control booth officer that he needed medical assistance.[6] The control booth officer called Nurse Davis (a non-party). Her medical notes reflect that the "control booth called [her] and said that medical was needed … for an inmate [Doering] that stated he was allergic to fish and ate lunch chow which contained fish." *Doc. 124-2 at 8*. According to her notes, she told the control booth officer "to bring [Doering] to the max infirmary for further evaluation since … [he] was breathing and responsive." *Id*.

10.     Despite Nurse Davis's request, "[Doering] was never brought to the max infirmary like requested." *Doc. 124-2 at 8*. However, apparently in anticipation of seeing Doering, Nurse Davis reviewed Doering's medical records and noted that they do *not* "show [him] ever having a fish allergy documented

---

[6] The record is unclear how Doering notified the control booth that he needed medical assistance on September 20, 2019. In his Complaint and his Statement of Disputed Facts, Doering states only that Correction Officers Smith and Harris called for help. *See Doc. 2 at 8; Doc. 135 at 2; Doc. 136 at 4*. In several grievances, Doering states that inmates in nearby cells informed the control booth officer of his need for medical assistance. *See, e.g., Doc. 81-3 at 1; Doc. 81-4 at 1*.

since incarceration." *Id*. At the time she made that medical note, Doering had been incarcerated in the ADC for *over two decades*. *Doc. 124-3*.[7]

11.    At 2:46 p.m. on September 20, 2019, Nurse Steinbarger (a non-party) was passing out pills in Doering's cell block. Her medical notes reflect that Doering said "he is allergic to fish … [and] he ate [fish] that was served for chow and his eyes 'swole shut and [he] ha[s] blotches everywhere.'" *Doc. 142-2 at 8*. Nurse Steinbarger's notes reflect that "[u]pon visualizing [Doering] in cell block, [he] had no noted edema to eyes or face, no whelps or hives noted to skin, color appropriate, respirations equal and non labored." *Id*.[8]

12.    During the 2 a.m. segregation rounds conducted by nurses on September 21, 2019 and September 22, 2019, Doering did not make any complaints about the alleged allergic reaction he had on September 20, after eating the noodles on his food tray, which also contained fish. *Doc. 124-2 at 8-9*.

---

[7] During his October 24, 2022 deposition, Doering testified that he had been in the ADC approximately 25 years. *Doc. 124-3 at 41*. According to the ADC's website, Doering entered the ADC in 1995. *See* ADC INMATE SEARCH, https://apps.ark.org/inmate_info/search.php (last visited Feb. 15, 2023). Thus, on September 20, 2019, Doering had been in the ADC for approximately 24 years.

[8] In Doering's Statement of Disputed Facts, he alleges that Nurse Steinbarger could not have made these observations because his "cell was behind a solid steel door with horrible lighting." *Doc. 135 at 8-9*. However, Doering does not: (1) cite any evidence in the record to support his claim; or (2) explain how and why Nurse Steinbarger would have made those *contemporaneous medical notes*, less than three hours after he ate the noodles around the fish, unless she had visually examined him as she stated in her notes. *See Doc. 132* (Order explaining to Doering that if he disagreed with any of the factual statements in Defendants' Statement of Undisputed Fact, "**he must explain … why he disagrees and include a citation to the evidence he is relying on to support his version of the disputed fact.**" (Emphasis in original).

13.     At 9:30 p.m. on September 22, 2019, Nurse Johnson (a non-party) saw Doering at sick call. According to her notes, Doering told her he had an allergy to fish and iodine but was "being made to eat [fish] or starve." Further, Doering told her he "was not required to have a script or proof of allergy at the other prison." Nurse Johnson noted that Doering's respiration was "even and unlabored;" he had "[n]o redness or rash" on his body; and there was "[n]o redness noted in [his] eyes." She instructed Doering not to eat fish until he was seen by a "medical provider," which presumably meant an APN or physician. *Doc. 124-2 at 9.*

14.     On September 29, 2019, Doering was seen by APN Moody. He requested her to issue him a "no fish script." According to APN Moody's medical notes, Doering told her that: (1) he is allergic to fish and iodine, and always has been; and (2) when he eats fish he develops hives; his throat swells; and his heart races. Finally, Doering told APN Moody that EARU staff members are now requiring him to be issued a "no fish script" in order for him to receive a food tray without fish. *Doc. 124-2 at 12.*

15.     APN Moody examined Doering and reviewed his medical records. Those medical records reflected that Doering had "4 scripts since 2007, [but] *has never had a fish allergy script.*" *Doc. 124-2 at 12* (emphasis added). She informed

8

Doering that a "fish allergy script w[ould] not be administered," and that "if he is allergic to fish then don't eat it."[9] *Id*.

16.    Doering testified that he has only eaten fish on two occasions in his life: (1) when he was two or three years old and suffered an allergic reaction; and (2) over fifty years later, on September 20, 2019, when he ate noodles that he believes came into contact with the fish on his noon food tray. *Doc. 135 at 6*.

17.    While Doering was in the EARU, he was served 21 meals each week. *Two* of those 21 weekly meals contained fish, which sometimes came with lunch and sometimes came with dinner. In his deposition, Doering admitted that, during the *five month* relevant time period—July 9, 2019 to December 13, 2019[10]—he ate 19 of the 21 meals served to him each week. Thus, based on his alleged fish allergy, Doering missed *two meals a week*, because he believed, if he ate *any* of the other food on those two trays, it would trigger his fish allergy. *Doc. 136 at 9*; *Doc. 126-3 at 5-6*.

18.    The Medical Defendants' Motion for Summary Judgment is supported by the Affidavit of Dr. Chris Horan, the Regional Medical Director for Wellpath,

---

[9] Specifically, Doering alleges that, when he "saw APN Moody for a no fish script [on September 29, 2019,] she told [him] this is not Burger King, and inmates cannot get out of eating food they do not like." *Doc. 2 at 11-12*; *see also Doering's Deposition, Doc. 124-3 at 36* (testifying that when APN Moody denied his request for no fish script "she told me, This isn't Burger King, and I can't have it my way."). Doering alleges this exchange showed APN Moody's "deliberately indifferent attitude," which "forced [him] to miss two meals a week and suffer hunger." *Doc. 2 at 12*.

[10] The relevant time period is from the date APN Drummond denied Doering's initial request for a "no fish script" to the date Doering filed his § 1983 Complaint.

LLC.[11] Based on Dr. Horan's review of Doering's medical records, his deposition testimony, and his commissary records, it was his medical opinion that: (1) APN Drummond's care and treatment of Doering on July 9, 2019, for his *first complaint* of having a fish allergy was appropriate;[12] and (2) On September 29, 2019, APN Moody provided Doering with appropriate medical care in denying his request for a fish allergy script and advising him that the way to control his fish allergy was to avoid eating any of the fish served to him on a food tray. *Doc. 124-5*; *Doc. 124-2 at 12*.

19.    Based on Dr. Horan's review of Doering's medical records, Doering "had no medically significant weight loss" between July 9, 2019 and December 13, 2019, the relevant time period. *Doc. 124-5 at 3*.

20.    Dr. Horan noted that, according to Doering's commissary records, he purchased ramen noodles from the prison commissary on numerous occasions. *Doc. 124-5 at 4*; *see also Doc. 124-4*. The packaging on those products contains *an allergy warning* stating: "Manufactured in a facility that also processes peanut, tree nuts, crustacean shellfish, and fish products." *Doc. 124-5 at 4*; *see also Doc. 124-4*

---

[11] Wellpath LLC is the contract medical care provider for inmates housed in the ADC.

[12] According to the Medical Defendants' Statement of Undisputed Facts, this was the first and only contact APN Drummond had with Doering about his fish allergy, during the relevant time period. *Doc. 124 at 4*. Although Doering disagreed with this statement in his Statement of Disputed Facts and alleged he had "numerous encounters with Drummond" (*Doc. 135 at 6*), he did not cite *any evidence* in the record to support his position. Further, in his deposition, Doering was specifically questioned about any encounters he had with APN Drummond regarding his fish allergy, prior to his alleged allergic reaction to fish on September 20, 2019, and Doering could only identify the July 9, 2019 examination. *See Doc. 124-3 at 34-35*.

*at 35-45*. Apparently, eating Ramen noodles that came into contact with "fish products" did not trigger Doering's fish allergy.

21.    Doering testified that he does not read packaging labels to determine whether or not products he eats contain fish or shellfish. *Doc. 124-3 at 38*.[13]

22.    Doering's commissary records also show that he purchased ten packages of "Ramen lime chili shrimp" noodles on January 11, 2021, and two

---

[13] In Doering's Statement of Disputed Facts he claims that he misunderstood the question he was asked about whether he reads packaging labels to determine whether or not products contain fish or shellfish. *Doc. 135 at 10*. The transcript of Doering's deposition provides the following relevant exchange:

Q:    If your commissary records reflected that you had purchased [Nissin Top Ramen] noodles, would you have any reason to disagree with that?
A:    No.
Q:    Are you aware that many of the Nissin Top Ramen noodle soups include a package warning which says, "Manufactured in a facility that also produces peanut, tree nut, crustacean shellfish, and fish products?"
A:    No, I'm not aware of that.
Q:    Do you have a practice of reading packages to see if it has fish content?
A:    No.
Q:    You don't normally read packages?
A:    No.

*Doc. 124-3 at 38*. Those questions leave no room for an alleged misunderstanding about whether Doering was specifically asked about whether he normally reads food labels to see if they state warnings about the food either containing or having had contact with "crustacean, shellfish, or fish products."

In Doering's Affidavit, he tries to qualify himself as an expert witness by claiming that he "was a Quality Control Inspector for OK Foods in Fort Smith, AR [in] 2011-2012," where he "worked with the USDA to insure proper sanitation and product safety." *Doc. 135 at 18*. He then offers the entirely self-serving opinion that he "knows [food] production factor[ies]" and foods "processed in a plant that also processes seafood must put that on the label because [of] USDA protocol, but after a product is run, a very thorough cleaning and sanitation is complete[d, so] there is no cross-contamination of products." *Id.* If, as Doering *speculates*, "there is no cross-contamination of products," why did Nissin Top Ramen believe it was necessary to put a warning label on its noodles?

Finally, since Doering has been incarcerated continuously in the ADC since 1995, it would have been *impossible* for him to be working as a Quality Control Inspector in Fort Smith in "2011-2012."

pouches of "Chicken of the Sea Smoked Oysters" on March 21, 2021. In his Affidavit, Doering tries to dodge this bullet by stating that he did not eat any of those items, but instead bought them for another inmate. *Doc. 135 at 19*.

23.    It is Dr. Horan's medical opinion that Doering "had appropriate access to healthcare and that he was provided with appropriate care and treatment for his complaints regarding a fish allergy by Medical Defendants Patrick Drummond and Terri Moody." Finally, Dr. Horan's Affidavit states that his opinions are: (1) "consistent with sound medical practices and [his] own professional judgment;" and (2) "stated to a reasonable degree of medical certainty." *Doc. 124-5 at 4*.

24.    On December 20, 2022, over two years *after* the relevant time period in this case, Doering was issued a "no fish script" by Dr. James Smith (a non-party). *Doc. 135 at 17-18*. Based on Doering's own deposition testimony, after APN Moody denied his second request for a no fish script, on September 29, 2019, he elected not to eat the two weekly meals containing fish. *Doc. 124-3 at 31, 41, 43-44*. Nothing in the record reflects the reason Dr. Smith issued Doering a no fish script on December 20, 2022, which means it: (a) could have been based on a medical determination that Doering now had a fish allergy supporting the issuance of a "no fish script;" or (b) it could have been a convenient way to end Doering's complaints about beings served fish. In either case, Doering receiving a "no fish

script," on December 20, 2022, has no bearing on the claims he is asserting in this action.

## B. Medical Defendants' Motion for Summary Judgment

In their Motion for Summary Judgment, APN Drummond and APN Moody argue that, based on the undisputed facts, they are entitled to judgment, as a matter of law, on Doering's inadequate medical care claims related to them denying his requests for a "no fish script."[14] *Doc. 123*.

To prevail on an Eighth Amendment inadequate medical care claim, Doering must prove that: (1) he had an objectively serious medical need; and (2) APN Drummond and APN Moody subjectively knew of, but deliberately disregarded, that serious medical need. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Deliberate indifference "requires proof of a reckless disregard of the known risk," and required evidence that demonstrates a medical provider's actions go *beyond* "gross negligence." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryant v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998). Thus, a prisoner's inadequate

---

[14] Doering exhausted these inadequate medical care claims against APN Drummond and APN Moody in EAM19-02358 and EAM19-02398, respectively. *See Doc. 96 at 18-21 & 27-30; Doc. 98*.

medical care claim must clear the high bar of "deliberate indifference." *Langford*, 614 F.3d at 460; *Gibson v. Weber*, 433 F. 3d 642, 646 (8th Cir. 2006).

Finally, the Eighth Circuit has held "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010); *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Instead, Doering must come forward with evidence demonstrating that the "course of treatment, or lack thereof [provided by APN Drummond and APN Moody], so deviated from professional standards that it amounted to deliberate indifference in violation of [the] Eighth Amendment right to be free from cruel and unusual punishment." *Dunlany*, 132 F.3d at 1243.

### 1. Doering's Inadequate Medical Care Claim Against APN Drummond

After examining Doering on July 9, 2019, APN Drummond denied his request for a "no fish script" because it was "not medically indicated based on [his examination of Doering.]" *Doc. 124-1*. APN Drummond advised Doering that he should "eat around the fish" on his food tray if he was concerned about having an allergic reaction to eating fish. *Id*.

On September 20, 2019, Doering was served a lunch tray with fish. Doering testified that he knew the lunch tray contained fish and attempted to "eat around

the fish" as recommended by APN Drummond. However, after eating some
noodles on his tray, his eyes to began to swell shut; his throat started to constrict;
he developed hives; and he began experiencing hot flashes. *Id. at 11*. Doering
testified this allergic reaction lasted for approximately three hours. *Doc. 135 at 19*.
According to Doering, the medical advice APN Drummond gave him on July 9,
2019, to "eat around the fish"—instead of giving him a "no fish script"—nearly
killed him and constitutes constitutionally inadequate medical care. *Doc. 2 at 10*;
*Doc. 135 at 19*.

When APN Drummond examined Doering on July 9, 2019, he was 55 years
old and had been in the ADC for approximately 24 years. According to Doering,
he had not consumed fish since he was two or three years old—a total of 52 years
of complete fish abstinence. *Doc. 124-1 at 1*; *Doc. 124-3 at 21*; *Doc. 135 at 7*.
Doering testified he did not mention his fish allergy before July of 2019, because
*the ADC* always provided him with a non-fish food tray upon request. *Doc. 136 at
11*; *see also Doc. 135 at 19*.

It is undisputed that the first and only time APN Drummond had any contact
with Doering about his fish allergy was on July 9, 2019. Doering explained to APN
Drummond that he now needed a "no fish script" because the EARU had a new
policy that no longer allowed prisoners to receive a "non-fish food tray" *upon
request*. Based on these limited facts provided by Doering, which were *not*

supported by anything in his medical records about having an allergic reaction to fish, APN Drummond advised Doering to eat only the *other food* on his tray and *not* eat the fish. Nothing about this common sense solution to Doering's concerns about having an allergic reaction to eating fish remotely suggests that APN Drummond was acting with "reckless disregard of a known risk of harm" when he denied Doering's request for a "no fish script."

In his deposition, Doering testified that, around noon on September 20, 2019, he followed APN Drummond's advice and ate noodles that were "around" the fish on his food tray. According to Doering, this caused him to have a serious allergic reaction that lasted three hours. However, when Nurse Steinbarger saw Doering at pill call, at 2:46 p.m., she saw nothing about Doering's eyes, face, skin, or respiration which suggested he had recently suffered an allergic reaction that began several hours earlier when he ate lunch. *Doc. 142-2 at 8*. Similarly, it is hard to square Doering's testimony that his allergic reaction to eating noodles on his food tray, which also contained fish, was so severe that he thought he would die with his penchant for purchasing and safely consuming commissary Ramen noodles that likely were cross-contaminated by having contact with "fish products." However, even if the Court accepts as true *all* of Doering's deposition testimony about the allergic reaction he suffered on September 20, 2019, his

inadequate medical care claim against APN Drummond still fails, as a matter of law.

On one occasion, APN Drummond saw Doering, who requested a "fish allergy script." There was nothing in Doering's medical records suggesting he had been diagnosed with a fish allergy, much less the severity of that allergy. Given those undisputed facts, APN Drummond advised Doering to eat only the food on his tray that was around the fish, but not eat the fish itself. This advise seemed reasonable enough to Doering *that he followed it on September 20, 2019*. For someone who supposedly had lived with a serious fish allergy, for *52 years*, to accept and follow APN Drummond's advice makes it clear *Doering himself* believed he could safely eat the food around the fish and not have an allergic reaction. The fact that Doering had an allergic reaction after eating the noodles around the fish in no way suggests APN Drummond gave him that advice in reckless disregard for a known serious risk of harm to Doering. *Coleman*, 114 F.3d at 784.

Doering has come forward with no facts suggesting that APN Drummond was "deliberately indifferent" to his medical needs, a legal standard that obligated him to offer proof that APN Drummond acted with "reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d at 545. Accordingly, APN Drummond's

Motion for Summary Judgment (*Doc. 123*) on Doering's inadequate medical care claims should be granted.

### 2. Doering's Inadequate Medical Care Claim Against APN Moody

On September 29, 2019, nine days after he alleges he had an allergic reaction after "eating around" the fish on his lunch tray, Doering reported to the infirmary and was seen by APN Moody. *Doc. 124-2 at 12*. According to APN Moody's notes, Doering told her that, from an early age he was allergic to fish, which caused him to develop hives, swelling of the throat, and a racing heart. *Id*. APN Moody's notes also reflect that Doering told her the EARU now required him to be issued a medical script to avoid being served fish. *Id*. Finally, APN Moody's notes state that Doering told her about having a serious allergic reaction when he tried to eat around the fish on his food tray on September 20, 2019.

After completing her examination of Doering and reviewing his medical records, which included the recent notes of Nurse Steinbarger and Nurse Johnson, APN Moody noted that Doering had "4 scripts since 2007, [but] *has never had a fish allergy script*." *Doc. 124-2 at 12* (emphasis added). Because nothing in her review of Doering's medical records, going all the way back to 2007, contained any support for his claim that he had a fish allergy, she told him she could not provide him with a fish allergy script. Instead, she advised him "if he is allergic to fish then don't eat it." *Id*.

The Court assumes, without deciding, that Doering had a fish allergy that constituted a serious medical need when he saw APN Moody on September 29, 2019. However, *nothing* in the record suggests that APN Moody *subjectively knew anything* about that serious medical need. Her examination of Doering and her review of his medical records did not reveal anything supporting his claim that he had an allergy to fish. Furthermore, the recent medical notes of Nurses Davis, Steinbarger, and Johnson raised questions about whether Doering was being truthful in claiming he had a serious allergy to fish.

Similarly, there is no evidence that APN Moody was being deliberately indifferent to a serious risk of harm to Doering when she: (1) decided against giving him a "no fish script" based solely on *his word*; and (2) instead, advised him that "if he is allergic to fish then *don't eat it.*" *Doc. 124-2 at 12. See Langford*, 614 F.3d at 460; *Gibson*, 433 F.3d at 646 (negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation).

Finally, in his sworn Affidavit, Dr. Chris Horan states his medical opinion that APN Moody provided Doering "with appropriate care and treatment for his complaints regarding a fish allergy." *Doc. 124-5*. According to Dr. Horan's Affidavit, his opinions are "consistent with sound medical practices and [his] own

professional judgment," and "stated to a reasonable degree of medical certainty." *Doc. 124-5 at 4*.[15]

In *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010), the Court held that "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." This means Doering was obligated to come forward with evidence demonstrating that the "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of [the] Eighth Amendment right to be free from cruel and unusual punishment." *Dunlany*, 132 F.3d at 1243. Doering has come forward with no such evidence.

Accordingly, APN Moody's Motion for Summary Judgment (*Doc. 123*) on Doering's inadequate medical care claim should be granted.

### 3. Doering's Inadequate Nutrition Claim Against APN Drummond and APN Moody

Finally, Doering vaguely alleges that the decision of APN Drummond and APN Moody to deny him a "no fish script" caused him to miss two meals a week,

---

[15] While Doering disagrees with Dr. Horan's opinions and believes Dr. Horan is biased because he works for the same medical company as Drummond and Moody, Doering did *not* present *any evidence* demonstrating that the "course of treatment or lack thereof [provided by APN Drummond and APN Moody] so deviated from professional standards that it amounted to deliberate indifference." *Dunlany*, 132 F.3d at 1243.

during the relevant five month time period, which caused him to "suffer hunger." *Doc. 2 at 12*. However, Doering has come forward with *no evidence* that, between July 9, 2019 and December 13, 2019, missing two of the 21 meals served to him each week deprived him of constitutionally adequate nutrition. To the contrary, Dr. Horan's Affidavit states that his "review of Mr. Doering's medical records show that he had no medically significant weight loss" from January 1, 2019 through December 22, 2022 (*Doc 124-5 at 3*), and Doering has now acknowledged he is "not complaining of significant weight loss" (*Doc. 141 at 1*).[16]

Assuming, without deciding, that Doering elected not to eat two of the 21 meals served to him each week, he has not submitted *any evidence* demonstrating that he did not receive adequate nutrition from the other 19 meals he ate each week. *See Jones v. Allen*, 2007 WL 2725218 *5 (W.D. Ark. Sep. 18, 2007) (granting summary judgment on inmate's inadequate nutrition claim, pointing out that plaintiff "does not maintain he has lost weight or was unable to go about his activities of day living because of the alleged inadequacies in the diet," and at the summary judgment stage he "must do more than just make conclusory allegations) (citing *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) ("Like any other civil litigant [a *pro se* litigant is] required to respond to defendants' motion with specific factual support for his claims to avoid summary judgment.").

---

[16] As previously discussed, Doering had access to additional food from the commissary when he had money in his inmate trust account. *Doc. 124-3 at 37*.

Accordingly, because Doering's inadequate diet claim against APN Drummond and APN Moody fails, as a matter of law, their Motion for Summary Judgment (*Doc. 123*) on that claim should be granted.

### C. The ADC Defendants' Motion for Summary Judgment

Doering's only remaining claims against ADC Defendants CO Harris and Lt. Graham are that they were deliberately indifference to his health and safety because they served him fish, on September 20, 2019, *after* he informed them that he had a fish allergy. *Docs. 96 & 98.*[17]

Doering states he is suing Lt. Graham because he was "Defendant Harris's supervisor[, on September 20, 2019,] who informed her that if I did not have a no fish script, I must take a fish tray or go hungry causing me to have a[n] allergic reaction and suffer for a week after being sick and in pain." *Doc. 136 at 5.* Doering states he is suing CO Harris "because, on September 20, 2019, he informed [her] that he was allergic to fish [and] she went and talked to [the] kitchen supervisor, Graham, and Sgt. Beale who all informed her if I had no fish script, I had to eat fish or starve." *Doc. 136 at 5.*[18]

---

[17] Doering exhausted these claims in Grievances EAM19-02358 and EAM19-02367. *Doc. 98.* The Court dismissed all of Doering's other claims against CO Harris and Lt. Graham for lack of exhaustion. *Docs. 96 & 98.*

[18] Specifically, Doering states:

On 9-20-2019 at least one hour before lunch, Defendant Harris saw the No Fish sign on my door. I told her I was deathly allergic to fish. She went and talked to Kitchen Supervisor and Defendant Graham, who told her if I did not have a No

It is undisputed that the EARU required Doering to obtain a "no fish script" *from a medical provider* to avoid being served food trays with fish. There is *no evidence* suggesting that CO Harris or Lt Graham had the authority to authorize Doering to receive an alternate meal that did not include fish. Furthermore, Doering's own Affidavit states that, after he told CO Harris he was allergic to fish, "[s]he went and talked to the Kitchen Supervisor and Defendant Graham" about it, and they informed her that if he did not have a "no fish script," he would be served a meal with fish. *Doc. 138 at 2*.

Viewing these undisputed facts in the light most favorable to Doering, he has come forward with *no evidence* that either CO Harris or Lt. Graham acted with deliberate indifference to his health and safety when he was served a lunch tray containing fish on September 20, 2019. *See Ryan v. Umphlett*, No. 1:19-CV-170-NAB, 2020 WL 2198927, at *4 (E.D. Mo. May 6, 2020) (dismissing plaintiff's complaint that jail officials violated his constitutional rights by refusing to provide him with alternative meal trays, after he told them of his self-declared food allergies, pointing out that plaintiff failed to allege the defendants, who were not medical professionals, "possessed the authority to change plaintiff's meal plan, had any personal involvement in the decision-making process of what kind of meals

---

Fish script to eat around the fish. Harris … knowingly put the fish tray in my cell …. I was forced for 2 years to go hungry for up to 19 hours twice a week."
*Doc. 138 at 2*; *see also, Doc. 2 at 9*; *Doc. 136 at 5*.

inmates are to be served, or deliberately disregarded a medical professional's order to provide him with specific food items.").

Accordingly, the ADC Defendants' Motion for Summary Judgment (*Doc. 126*) should be granted.[19]

### D. Doering's Motion for Summary Judgment

Finally, on November 17, 2022, Doering filed a three-page Motion for Summary Judgment arguing that he should be awarded $50,000 from the four remaining Defendants for: (1) the allergic reaction he suffered on September 20, 2019, including the "almost three hours in [his] cell with [his] throat closed up casping [sic] for breath all alone, scared, crying, thinking death was coming, not even being able to scream for help, and being sick for a couple weeks after;" and (2) "twice a week for years being forced to starve." *Doc. 114.*

The Medical Defendants and the ADC Defendants filed Responses pointing out that Doering's Motion for Summary Judgment was procedurally defective because it was not supported by a brief, as required by Local Rule 7.2, or a separate statement of undisputed facts, as required by Local Rule 56.1. *Docs. 115 & 116.*

---

[19] Defendants Harris and Graham also argue that they are entitled to qualified immunity. Because Doering has failed to come forward with any facts supporting his claim that these two Defendants were deliberately indifferent to his health and safety, the Court need not address their qualified immunity defense.

On December 7, 2022, I entered an Order informing Doering that, if he "wishe[d] the Court to reach the merits of his … Motion (*Doc. 114*), *he must, **no later than December 19, 2022**, filed a Brief in Support of his Motion, pursuant to Local Rule 7.2, and a separate Statement of Undisputed Facts, pursuant to Local Rule 56.1.*" *Doc. 119 at 6* (emphasis in original). Importantly, the December 7 Order cautioned Doering that, if he failed to timely comply, "his … Motion may be denied on procedural grounds." *Id*. Doering did *not* comply with that Order.

Accordingly, because Doering Motion for Summary Judgment (*Doc. 114*) fails to comply with Rule 56 of the Federal Rules of Civil Procedure and Rule 7.2 and 56.1 of the Local Rules of Procedure for the Eastern District of Arkansas, it should be denied.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    The Medical Defendants' Motion for Summary Judgment (*Doc. 123*) be GRANTED.

2.    The ADC Defendants' Motion for Summary Judgment (*Doc. 126*) be GRANTED.

3.    Doering's Motion for Summary Judgment (*Doc. 114*) be DENIED.

4.    This action be DISMISSED, WITH PREJUDICE.

DATED this 22nd day of February, 2023.

_____

UNITED STATES MAGISTRATE JUDGE